UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DIONNA D.,

                          Plaintiff,

        v.

ACTING COMMISSIONER OF SOCIAL
SECURITY,

                          Defendant.

Case No. 2:24-cv-01724-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff filed this action under 42 U.S.C. § 405(g) for judicial review of

defendant's denial of plaintiff's application for supplemental security income ("SSI") and

disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of

Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this

matter heard by the undersigned Magistrate Judge. Dkt. 3. Plaintiff challenges the ALJ's

decision finding that plaintiff was not disabled. Dkt. 6, Complaint.

Plaintiff filed applications for SSI and DIB in March 2019 alleging a disability

onset date of March 7, 2019 (later amended to March 21, 2019). The date last insured

for DIB was December 31, 2024. AR 13, 44, 181-88, 802. The applications were denied

initially and upon reconsideration.

On January 19, 2021, ALJ M.J. Adams conducted a hearing. AR 39-68. On

February 25, 2021, ALJ Adams issued a decision finding plaintiff not disabled. The

Appeals Council declined the request for review and plaintiff filed an appeal to this

Court. AR 891-93. On September 7, 2022, this Court reversed and remanded the case for further proceedings. *Dionna D. v. Comm'r of Soc. Sec.*, 2022 WL 4103404 (W.D. Wash. Sept. 7, 2022).

On December 12, 2023, ALJ Cecilia LaCara conducted a second hearing. AR 827-55. On July 22, 2024, ALJ LaCara issued an unfavorable decision finding plaintiff not disabled. AR 802-19. Plaintiff filed this appeal on October 22, 2024. Dkt. 6 at 3.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

## DISCUSSION

ALJ LaCara determined that plaintiff had the following severe impairments: back disorder, obesity, depressive disorder, and anxiety disorder. AR 804. The ALJ found

that plaintiff could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and

416.967(b) with the following additional restrictions:

> she can stand or walk in any combination for a total of 6 hours in an 8-hour workday; she can sit for 6 hours in an 8-hour workday; sit/stand option at will but she does not leave the workstation; she is limited to occasional climbing of ramps, stairs, ladders, ropes, scaffolds, stooping, kneeling, crouching, and crawling; she is limited to frequent balancing; she must avoid concentrated exposure to hazards; she is limited to simple routine tasks; she is limited to no interaction with the public (i.e. essential duties of the job does not require interaction with the public. However, incidental contact allowed); and she is limited to occasional superficial contact with coworkers.

AR 807. Based on hypotheticals posed to the Vocational Expert (VE) at the hearing, the

ALJ concluded at step four that plaintiff could not perform her past work, but could work,

instead, as an office helper; assembler, production; and inspector, hand packer. AR

819.

Plaintiff argues that the ALJ erred by improperly discounting her subjective

symptom testimony and by improperly considering the medical opinion evidence. Dkt.

10 at 4, 13-16. The Commissioner contends that the ALJ reasonably evaluated

plaintiff's testimony and the medical opinions. Dkt. 12 at 1, 6.

## 1. Medical evidence.

Plaintiff challenges the ALJ's assessment of the opinions of Dr. Tasmyn Bowes,

Psy.D., Dr. David Widlan, Ph.D., and ARNP Aleksandr Torchilo. Dkt. 10 at 13-16.

Plaintiff filed the claim on March 25, 2019, so the ALJ applied the 2017

regulations. Under the 2017 regulations, the Commissioner "will not defer or give any

specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the

claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must

nonetheless explain with specificity how they considered the factors of supportability

1    and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b),

2    416.920c(a)–(b).

3          The Ninth Circuit considered the 2017 regulations in *Woods v. Kijakazi*, 32 F.4th

4    785 (9th Cir. 2022). The Court held that under the 2017 regulations,

5              an ALJ cannot reject an examining or treating doctor's opinion as
          unsupported or inconsistent without providing an explanation supported by
6          substantial evidence. The agency must "articulate ... how persuasive" it
          finds "all of the medical opinions" from each doctor or other source, 20
7          C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability
          and consistency factors" in reaching these findings, *id*. § 404.1520c(b)(2).
8    *Id*.

9          **a.  Dr. Tasmyn Bowes, Psy.D.**

10         On May 7, 2019, Dr. Bowes examined plaintiff and completed a psychological

11   evaluation. AR 430-44. Dr. Bowes opined that the following symptoms affect plaintiff's

12   ability to work: sadness, anhedonia, lack of energy/motivation, feelings of hopelessness

13   and worthlessness, social isolation, sleep disturbance, irritability, suicidal ideation, panic

14   attacks with agoraphobia, difficulties with concentration, and vague visual

15   hallucinations. AR 432. Dr. Bowes diagnosed major depressive disorder, recurrent,

16   severe with psychotic features (recently), panic disorder, and agoraphobia. *Id*.

17         Dr. Bowes opined marked limitations in the following basic work activities:

18   understand, remember, and persist in tasks by following detailed instructions; perform

19   activities within a schedule, maintain regular attendance, and be punctual within

20   customary tolerances without special supervision; communicate and perform effectively

21   in a work setting; maintain appropriate behavior in a work setting; and complete a

22   normal workday or workweek without interruptions from psychologically based

23

24

25

4

1    symptoms. AR 433. Dr. Bowes opined moderate or mild limitations in all other work

2    activities and rated plaintiff's overall severity as marked. *Id.*

3        The ALJ found Dr. Bowes' opinion unpersuasive, except as to detailed

4    instructions, and stated the findings were unsupported by the corresponding evaluation

5    notes and were inconsistent with the overall medical record. AR 816. Specifically, the

6    ALJ found the marked limitations unsupported by the MSE results, noting that plaintiff

7    was within normal limits in every area of functioning except concentration. *Id.* The ALJ

8    also reasoned that Dr. Bowes' opined limitations were inconsistent with treatment notes

9    showing progressive improvement in symptoms; MSEs that primarily showing normal

10   mood and affect without cognitive deficits; and recent records showing symptoms as

11   well-managed with medication such that her primary goal in therapy was obtaining

12   housing. AR 816.

13       Plaintiff argues that the ALJ erred because the record does not show sustained

14   improvement in plaintiff's functioning and that MSEs in the record showing normal mood

15   and affect without cognitive impairment were consistent with Dr. Bowes' opinion. Dkt. 10

16   at 14.

17              **i.  Supportability**

18       The ALJ contends that Dr. Bowes' opined marked limitations are unsupported by

19   the mostly normal MSE results. AR 816. Supportability is the extent to which a medical

20   source supports their opinion by explaining the relevant objective medical evidence.

21   *Woods,* 32 F.4th at 791-92.

22       The MSE was not the only objective medical evidence used in the evaluation –

23   Dr. Bowes also conducted a clinical interview, Beck's depression and anxiety

24

25
                                            5

inventories, and the Trails Making Tests. AR 430-33; *see also Buck v. Berryhill*, 869

F.3d 1040, 1049 (9th Cir. 2017) (clinical interview is an "objective measure").

       The ALJ's decision does not provide reasoning about how the normal findings in

memory, judgment, perception, and orientation would be in conflict with the marked

limitations in work activities opined by Dr. Bowes. *See, e.g.*, *Rule v. Saul*, 859 F.App'x

754, 754 (9th Cir. 2021) (explaining that evidence showing "[claimant's] thought

processes, memory, and concentration were within normal limits did not contradict

[provider's] conclusions that [claimant] was markedly impaired in her ability to maintain

a schedule, communicate with others in a work setting, or plan independently"); *William

B v. Saul*, 2020 WL 4318755, at *3 (E.D. Wash. July 27, 2020) ("Simply because

Plaintiff did well on portions of the [MSE] does not negate the other abnormal findings,

as well as [the provider's] professional assessments.").

       Dr. Bowes also provided clinical findings and test results alongside the MSE to

support her opinion: plaintiff's depression and anxiety were both rated as severe on the

Beck's inventories and Dr. Bowes specifically noted that plaintiff's panic attacks with

agoraphobia limit her ability to show up for appointments, leave her house, and drive.

AR 432. The ALJ erred by failing to explain how plaintiff's mental status examinations

contradicted Dr. Bowes' findings and by overlooking the other objective medical

evidence. The ALJ's finding is not supported by substantial evidence.

### ii. Consistency

       The ALJ also found the marked limitations inconsistent with the longitudinal

record. AR 816. The ALJ argues that Dr. Bowes did not have the benefit of reviewing

treatment notes, which show progressive improvement in symptoms, and MSEs that

primarily show normal mood and affect without cognitive deficits. *Id*. The ALJ also notes
that the opinion is inconsistent with recent records showing plaintiff's symptoms are
well-managed with medication such that her primary goal in therapy was obtaining
housing. *Id.*

Consistency is the extent to which a medical opinion is consistent with the
evidence from other medical and nonmedical sources in the claim. *Woods*, 32 F.4th at
791-92. The defendant asserts that Dr. Bowes' opinion is inconsistent with mental
status examinations throughout the record that consistently reflect that plaintiff had no
cognitive impairment, her memory and judgment were intact, and she was well-groomed
and appropriately behaved. AR 434, 484, 503, 710, 718, 721, 738-39, 741-42, 744-45,
1186-87, 1192, 1202-03, 1209, 1215, 1325. But the same MSEs also describe plaintiff's
mood as "depressed," "frustrated," "anxious," "dysphoric," "okay," "preoccupied," and
"agitated," and plaintiff's affect is described as "full range," "mood congruent," "flat," and
"restricted." Plaintiff also reported having transient suicidal ideation on several
occasions. AR 584-85, 590, 633, 706, 714.

The ALJ's decision fails to provide reasoning as to how such examination results
are inconsistent with the opined limitations. The ALJ's consistency finding is not
supported by substantial evidence. *See Kristine S. v. Saul*, 2020 WL 3578048, at *10
(C.D. Cal. June 30, 2020) (finding ALJ improperly relied on "normal" or "unremarkable"
MSE findings when treatment notes as a whole reflected persistent symptoms); *Emily S.
v. Kijakazi,* 2023 WL 3805257, at *8 (N.D. Cal. June 1, 2023) (a claimant cannot have
"generally normal findings" if MSEs demonstrate consistent "mood and affect
disturbances" in line with her psychiatric diagnoses).

1    The ALJ also noted that the limitations opined by Dr. Bowes were inconsistent
2  with medical records showing progressive improvement in symptoms and successful
3  treatment with medication such that her focus at recent therapy appointments was
4  obtaining housing. AR 816. Plaintiff argues that the record shows no sustained
5  improvement, only that her symptoms waxed and waned over time. Dkt. 10 at 14. As
6  plaintiff has discussed, the record does not show sustained improvement in plaintiff's
7  conditions, and plaintiff's focus in therapy does not contradict the assessed limitations.
8  *Id.* The consistency finding is not supported by substantial evidence. The ALJ offers
9  several examples of plaintiff's improvement in her symptoms but failed to examine this
10  evidence in the broader context of plaintiff's impairment. *Ghanim*, 763 F.3d at 1164
11  (treatment records cannot be cherry-picked; the ALJ must consider a particular record
12  of treatment in light of the overall diagnostic record). An ALJ must interpret instances of
13  improvement "with an understanding of the patient's overall well-being and the nature of
14  her symptoms." *Garrison*, 759 F.3d at 1017.
15    In finding that plaintiff's mental health significantly improved and stabilized, the
16  ALJ emphasizes positive findings from treatment records and ignores documentation of
17  plaintiff's ongoing struggles during the same period. For example, the ALJ notes that
18  plaintiff was feeling better with an increased dose of Lamictal in June 2019. AR 811. Yet
19  the ALJ omits discussion of counseling intake forms from the same month which
20  indicate plaintiff was suffering intrusive negative thoughts, experiencing physical
21  discomfort associated with panic attacks, and having difficulty sleeping and
22  concentrating. AR 702.

1    Accordingly, the ALJ failed to provide a proper basis for discounting Dr. Bowes'

2  opinion.

3    An error that is inconsequential to the non-disability determination is harmless.

4  *Stout v. Comm'r, Soc. Sec. Admin*., 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors of

5  the ALJ result in a residual functional capacity (RFC) that does not include relevant

6  work-related limitations, the RFC is deficient and the error is not harmless. *Id*. at 1052,

7  1054; *see also Carmickle*, 533 F.3d at 1160; *Embrey v. Bowen,* 849 F.2d 418, 422-23

8  (9th Cir. 1988).

9    If Dr, Bowes opinions had been given full weight, the ALJ may have decided on a

10  more restrictive RFC. Therefore, the errors in crediting this opinion were not harmless.

11

12    **b.  Dr. David Widlan, Ph.D.**

13    Dr. David Widlan, Ph.D., evaluated plaintiff on June 19, 2019. AR 502-06. Dr.

14  Widlan's report was based on a clinical interview, MSE, SSA forms, and two medical

15  records dated February 13, 2019, and March 8, 2019. AR 502. Plaintiff had difficulty

16  finding the office and arrived twenty minutes late to her appointment in an agitated

17  state. AR 502. She presented in a depressed mood, exhibited general dysphoria, and

18  had a restricted affect. AR 503. Dr. Widlan noted that plaintiff was unable to name the

19  governor or a current event and was unable to correctly identify states that bordered

20  Washington, demonstrating an impaired fund of knowledge. AR 504. Dr. Widlan also

21  found deficits in memory and concentration, noting that she struggled to maintain focus,

22  responded with a slow pace, and "clearly takes longer than an average-functioning

23  individual to complete ADLs." AR 504-05.

24

25

1       Dr. Widlan opined that plaintiff could accept simple instruction from a supervisor,

2   but moderately complex tasks would be too difficult. AR 505. He found plaintiff to be

3   capable of navigating simple social stressors on a consistent and routine basis, but that

4   she would likely become overwhelmed by moderately novel stressors. *Id.* Dr. Widlan

5   stated that plaintiff would struggle to persist with adequate pace due to panic, and that

6   her proclivity for avoidant behavior would cause absenteeism. *Id.*

7       The ALJ found Dr. Widlan's opinion only moderately persuasive, determining that

8   the opinion was vague in terms of plaintiff's functional capabilities and, to the extent it

9   implied marked limitations, not entirely consistent with the longitudinal record. AR 817.

10      An ALJ may reject an opinion that does "not show how [the claimant's] symptoms

11  translate into specific functional deficits which preclude work activity." *Morgan v.*

12  *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999); *see also Meanel v.*

13  *Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (holding that a statement that plaintiff would

14  have "decreased concentration skills" was too vague to be useful in the disability

15  determination).

16      Dr. Widlan failed to specify functional limitations in his opinion. For example, he

17  did not explain what level of performance is suggested by the statement that plaintiff

18  would "struggle to persist" or how much absenteeism would result from avoidant

19  behavior. AR 505, 817. The ALJ's reasonably found Dr. Widlan's opinion less

20  persuasive on this basis.

21      Plaintiff also criticizes the ALJ's discussion of discrepancies between plaintiff's

22  presentation at her evaluations with Dr. Bowes and Dr. Widlan but fails to identify any

23  error made by the ALJ. Dkt. 10 at 15-16. The Court need not address this discussion, as

24

25

1    any potential error would be harmless. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d

2    1155, 1162 (9th Cir. 2008) (although an ALJ erred on one reason he gave to discount a

3    medical opinion, "this error was harmless because the ALJ gave a reason supported by

4    the record" to discount the opinion).

5         c.  **Aleksandr Torchilo, ARNP**

6         The ALJ found the opinion of ARNP Torchilo generally persuasive. AR 815.

7    ARNP Torchilo found plaintiff to have mild to moderate limitations overall, with moderate

8    limitations in the areas of understanding and remembering detailed instructions,

9    performing activities within a schedule, and adapting to normal hazards. AR 793, 795-

10   96. ARNP Torchilo also noted that plaintiff would have episodes of deterioration or

11   decompensation with increased anxiety and panic due to work-related stressors. AR

12   797. The ALJ found this portion of the opinion less persuasive, reasoning that it was not

13   completely supported by the medical evidence. AR 816.

14        The ALJ cited plaintiff's significant improvement with treatment and reasoned that

15   plaintiff was reportedly babysitting her three grandchildren for one hour per day even

16   when she complained of disabling anxiety. *Id.* The ALJ also noted that plaintiff reported

17   to ARNP Torchilo that she had the ability to manage her anxiety before it escalates. *Id.,*

18   AR 739.

19        Plaintiff argues that her ability to passively watch her grandchildren for an hour at

20   a time is not inconsistent with ARNP Torchilo's opinion about how she could be

21   expected to respond to the pressures and expectations of a work setting. Dkt. 10 at 16.

22   Plaintiff then concludes that the ALJ's finding was not supported by substantial

23   evidence. *Id.*

24

25

1    Plaintiff's does not identify a limitation that the ALJ should have included in her RFC

2    if ARNP Torchilo's assessment had been properly evaluated; the Court finds that

3    plaintiff has failed to meet her burden of showing that the ALJ committed harmful error.

4    *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 n.2 (9th Cir. 2009).

5    **2. Plaintiff's statements regarding symptoms and limitations**

6    Plaintiff challenges the ALJ's assessment of her subjective symptom testimony.

7    Dkt. 10 at 4-13.

8    Plaintiff testified at the 2024 hearing that depression causes her to have no

9    energy, so she sleeps a lot. AR 836-37. She described being easily overwhelmed and

10   she starts to feel flustered and panicky "when something gets to be too much" for her.

11   AR 837. She has difficulty staying in her room with the door closed, going into grocery

12   stores, and being around people arguing. AR 839. She gets flustered, can't think, and

13   starts to cry when her anxiety "really kicks in." *Id.*

14   At the 2021 hearing, plaintiff stated that her attitude was up and down, and she

15   was becoming very unpredictable. AR 49. She also testified that she struggles to

16   concentrate and can lose focus on what she's doing when she hears people talking. AR

17   55. When she has panic attacks, she gets hot, feels like she can't breathe, and starts

18   crying. AR 53.

19   In a function report dated April 29, 2019, plaintiff stated her ability to work was

20   limited because her panic attacks and anxiety can happen at any time, and depression

21   makes it hard to get out of bed and be around people. AR 235. She stated that she

22   spends time with family a few times per month, visits her son's house to babysit daily,

23   and that she can generally go out alone unless she is having a panic attack, or her

24

25

anxiety is high. AR 238-39. Plaintiff wrote that her anxiety and depression affect her hearing, completing tasks, concentration, understanding, and following instructions. AR 240. She has difficulty handling stress and hates change. AR 241.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause some of her symptoms, however, her statements considering the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 809. Plaintiff only challenges the ALJ's assessment of her mental health symptom testimony. See Dkt. 10 at 2-13. Plaintiff alleges that the ALJ failed to give specific, clear, and convincing reasons supported by substantial evidence for discounting her allegations about the impact of her impairments on her ability to sustain work activity. Dkt. 10 at 2.

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). In assessing a Plaintiff's credibility, the ALJ must determine whether plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear, and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

### a. Improvement with Treatment

The ALJ found that plaintiff's allegations of chronic depression and anxiety that have only minimally improved with treatment were inconsistent with the medical

1    evidence, which indicates improvement and overall stability in mental health with

2    medication adjustments. AR 810. Plaintiff argues that the ALJ's finding is not supported

3    by substantial evidence because any improvement or stability she achieved with

4    medication was limited and not sustained. Dkt. 10 at 4.

5        Evidence of medical treatment successfully relieving mental health symptoms

6    can undermine a claim of disability. *See* 20 C.F.R. § 404.1529(c)(3)(iv) -(vi); *Wellington*

7    *v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Yet, without finding plaintiff's condition

8    improved such that her symptoms were no longer as limiting as claimed, this was an

9    insufficient basis to reject her testimony. "That a person who suffers from severe panic

10   attacks, anxiety, and depression makes some improvement does not mean that the

11   person's impairments no longer seriously affect her ability to function in a workplace."

12   *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

13       As discussed above, the ALJ offers several examples of plaintiff's improvement

14   in her symptoms but failed to examine this evidence in the broader context of plaintiff's

15   impairment. *Ghanim*, 763 F.3d at 1164 (treatment records cannot be cherry-picked; the

16   ALJ must consider a particular record of treatment in light of the overall diagnostic

17   record). An ALJ must interpret instances of improvement "with an understanding of the

18   patient's overall well-being and the nature of her symptoms." *Garrison*, 759 F.3d at

19   1017.

20       The ALJ emphasizes positive findings from treatment records and ignores

21   documentation of plaintiff's ongoing struggles during the same period. For example, the

22   ALJ notes that plaintiff was feeling better with an increased dose of Lamictal in June

23   2019. AR 811. Yet the ALJ omits discussion of counseling intake forms from the same

24

25

1   month which indicate plaintiff was suffering intrusive negative thoughts, experiencing

2   physical discomfort associated with panic attacks, and having difficulty sleeping and

3   concentrating. AR 702.

4       The ALJ focuses on an instance in October 2019 where plaintiff endorsed a more

5   stable mood and generally less anxiety and irritability. AR 811 (citing AR 748). However,

6   the ALJ failed to mention that at the same visit, plaintiff also told her provider that she

7   was spending most of the day in bed and had low energy and poor focus. AR 748.

8       The ALJ erroneously focused on isolated instances of improvement that did not,

9   "in fact, constitute examples of a broader development." *Garrison*, 759 F.3d at 1018.

10  The record shows that treatment did not result in sustained medical improvement that

11  positively affected plaintiff's ability to function in the workplace, and the ALJ's

12  determination of improvement was not supported by substantial evidence.

13          **b.  Noncompliance with Treatment**

14      The ALJ also noted that plaintiff was reportedly not taking her medication

15  consistently in March 2021, but that subsequent records showed mental health stability

16  with medication compliance. AR 811. Plaintiff argues that the ALJ ignored her reasons

17  for not taking her medication and again cherry-picked evidence of improvement with

18  compliance. Dkt. 10 at 10.

19      Plaintiff told her therapist on March 25, 2021, that she stopped taking her

20  medications because she had been experiencing panic attacks within 30 minutes of

21  taking them over the past two weeks. AR 1233. When she next spoke to her therapist

22  on April 29, 2021, she reported that her medication had been adjusted and had helped

23

24

25

1    her anxiety. AR 1238. The ALJ cites this single incidence of treatment noncompliance

2    as a reason to discount plaintiff's symptom testimony. AR 812.

3        An inadequately explained failure to follow a prescribed treatment regimen can

4    serve as a valid reason to discount a claimant's testimony. *Fair v. Bowen*, 885 F.2d 597,

5    603 (9th Cir. 1989). An ALJ must consider the possible reasons for a claimant's failure

6    to comply with treatment before discounting a claimant's testimony on this basis. *See*

7    SSR 16-3p, 2017 WL 1580304, at *9 (Oct. 25, 2017). If the claimant has a good reason

8    for failing to comply with treatment, noncompliance is not a proper basis for rejecting the

9    claimant's testimony. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The Ninth

10    Circuit has found mental illness to be a good reason for failing to take medication.

11    *Garrison*, 759 F.3d at 1018, n.24 ("we do not punish the mentally ill for occasionally

12    going off their medication when the record affords compelling reason to view such

13    departures from prescribed treatment as part of claimants' underlying mental

14    afflictions.").

15        Here, the record shows plaintiff's period of noncompliance was a result of her

16    anxiety disorder because she went off her medication when she began experiencing

17    panic attacks shortly after taking it. Therefore, the ALJ erred in discrediting plaintiff's

18    subjective testimony based on noncompliance with her medication.

19        **c. Plaintiff's Presentation at Appointments**

20        The ALJ also found plaintiff's allegations of "totally incapacitating depression and

21    anxiety" conflicted with notes that plaintiff generally presented to appointments in no

22    acute distress and was often noted to be cooperative and/or pleasant. AR 812. Plaintiff

23    asserts that reports of "no acute distress" in medical records are generally meaningless,

24

25

1    and that the ALJ failed to connect the cited observations to specific pieces of plaintiff's

2    testimony. Dkt. 10 at 11.

3        Inconsistencies between a claimant's testimony and the objective medical

4    evidence can be a valid reason to discount the claimant's testimony. *Bray v. Comm'r of*

5    *Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, district courts in this

6    circuit, including this Court, have questioned the applicability of notes of "no acute

7    distress" to chronic conditions. *See, e.g.*, *Troy A. H. v. Comm'r of Soc. Sec.,* 2022 WL

8    336846, at *5 (D. Or. Feb. 4, 2022) ("it is questionable whether a chart note of "no acute

9    distress" is relevant to allegations of chronic symptoms."); *Richard F. v. Comm'r of Soc.*

10   *Sec.*, 2019 WL 6713375, at *7 (W.D. Wash. Dec. 10, 2019) (quoting Oxford English

11   Dictionary, acute (3d ed. Dec. 2011) ("Clinical findings of "no acute distress" do not

12   undermine Plaintiff's testimony. "Acute" means "of recent or sudden onset; contrasted

13   with chronic."").

14       The record shows plaintiff's psychological impairments are chronic. *See* AR 442

15   ("chronic history of depression, worsening anxiety"); 791 ("chronic symptoms [of

16   depression and anxiety] will wax and wane throughout client's life"). The fact that

17   plaintiff does not generally present in acute distress is not inconsistent with plaintiff's

18   testimony, and the ALJ erred by discounting her testimony on this basis.

19       It is also improper to find a claimant less than fully credible because she is noted

20   as pleasant and cooperative at appointments. *Forester v. Colvin*, 22 F. Supp. 3d 1117,

21   1124-25 (D. Or. 2014). "To hold otherwise would mean that a claimant need not be

22   believed unless the claimant acted in an agitated and disagreeable manner, an

23   anomalous result." *Childress v. Colvin*, 2014 WL 4629593, at *13 (N.D. Cal. Sept. 16,

24

25

2014). The ALJ does not explain, and the Court cannot discern, why plaintiff's testimony of severe depression and anxiety is inherently inconsistent with a pleasant and cooperative demeanor. *Gia M. P. v. Comm'r Soc. Sec. Admin.*, 2018 WL 4031606, at *5 (D. Or. Aug. 23, 2018) ("Plaintiff's demeanor and appearance do not necessarily undermine her contention that she suffers from depression and anxiety that prevent her from working full time."); *Patricia P. v. Comm'r of Soc. Sec.*, 2020 WL 7488814, at *4 (W.D. Wash. Dec. 21, 2020) ("The Commissioner points to a calm, pleasant, cooperative demeanor with doctors, but this does not contradict Plaintiff's testimony of internal anxiety.").

Plaintiff's pleasant and cooperative presentation at appointments is not a clear and convincing reason to discount her testimony. *Nicole N.-M. v. Comm'r, Soc. Sec. Admin.*, 649 F. Supp. 3d 1025, 1037 (D. Or. 2022) (plaintiff's pleasant demeanor was not a clear and convincing reason to discount her testimony where the ALJ failed to explain why the findings related to her demeanor undermined her symptoms).

### d.  Plaintiff's Focus at Counseling Sessions

The ALJ alleges that plaintiff's focus on obtaining housing demonstrates mental health stability such that the focus during therapy appointments was unrelated to any mental health symptoms, thus undermining plaintiff's symptom testimony. AR 815, 813. Plaintiff contends that her efforts to get assistance with tasks that overwhelmed her was not substantial evidence of mental health stability. Dkt. 10 at 11.

The ALJ did not include any discussion of context. AR 813, 1272-73. When plaintiff reestablished counseling with Sound in March 2023, she reported feeling overwhelmed by housing and transportation needs, and she asserts that when she gets

1    overwhelmed, she shuts down. AR 1262. Plaintiff's treatment plan developed at that

2    time includes an introduction to housing resources, but also states that the counselor

3    would help plaintiff develop advocacy skills to get her needs met and introduce plaintiff

4    to at least three stress management tools to reduce her shutdowns. AR 1169-70.

5         The inclusion of these interventions suggests that plaintiff's top goal was housing

6    because it caused her stress and exacerbated her pre-existing anxiety. As this Court

7    has stated, "discussion of ongoing psychological stressors is a perfectly reasonable

8    topic of discussion during mental health therapy." *Vivian L. v. Berryhill*, 2018 WL

9    6242488, at *5 (W.D. Wash. Nov. 29, 2018). Thus, the focus during therapy was not, as

10   the ALJ states, "unrelated to any mental health symptoms." AR 815.

11        Records in the following months also demonstrate that plaintiff was experiencing

12   ongoing symptoms of depression and anxiety. *See, e.g.*, AR 1201-02 (plaintiff reported

13   low energy, staying in bed all day, lacking motivation in April 2023); 1208-09 (plaintiff

14   stated anxiety was still "pretty up there," struggling with ADLs and getting out of bed in

15   June 2023). These records provide the broader context in which to consider plaintiff's

16   counseling notes. When viewed in this context, plaintiff's focus on housing does not

17   demonstrate stability, rather, it indicates plaintiff was experiencing situational stressors

18   that exacerbated ongoing struggles with her mental health. Accordingly, plaintiff's focus

19   on obtaining housing was not a clear and convincing reason to reject her subjective

20   symptom testimony.

21        An error that is inconsequential to the non-disability determination is harmless.

22   *Stout,* 454 F.3d at 1054. If the errors of the ALJ result in a residual functional capacity

23   (RFC) that does not include relevant work-related limitations, the RFC is deficient and

24

25

the error is not harmless. *Id.; see also, Carmickle,* 533 F.3d at 1160; *Embrey,* 849 F.2d at 422-23. Here, plaintiff described limitations that, had the ALJ considered them, may have resulted in a more restrictive RFC. Therefore, the ALJ's errors in evaluating her testimony were not harmless.

3. **Whether the Court should reverse with a direction to award benefits.**

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668. The Ninth Circuit emphasized in *Leon* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. *Leon*, 880 F.3d at 1045.

Here, plaintiff asks that the Court remand for an award of benefits based on the ALJ's errors in evaluating the medical opinion evidence and plaintiff's subjective testimony. Based on a review of the record, the Court concludes that the record is not free from important and relevant conflicts, such as conflicts in the medical evidence. Therefore, this matter should be reversed for further administrative proceedings, including a de novo hearing, not with a direction to award benefits. *See id.*

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and

remanded for further administrative proceedings. On remand, the Commissioner must conduct a de novo hearing, allow plaintiff to present additional evidence, re-evaluate the medical opinion of Dr. Bowes, and re-evaluate plaintiff's statements about her symptoms and limitations.

Dated this 2nd day of July, 2025

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge